IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAMELA ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:08cv153-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I. Introduction

The plaintiff, Pamela Allen ("Allen"), applied for supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381, *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Allen then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge.

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Based on the court's review of the record in this case and the briefs of the parties, the court

concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of
> not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments
> set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  Administrative Proceedings

Allen was 39 years old at the time of the hearing before the ALJ. (R. 136, 436, 463.) She attended some special education classes and completed the eleventh grade. (R. 439.) Allen has little to no work experience.[4] (R. 441, 463.) Allen alleges that she became disabled on March 14, 2005, due to seizures, high blood pressure, sinus problems, shoulder pain, vertigo, anemia, borderline intellectual functioning, and mild mental retardation. (R. 359, 395, 428-31, 442-45, 447, 449, 452.) Following the hearing, the ALJ concluded that Allen suffers from a severe impairment of borderline intellectual functioning and non-severe impairments

---

[4] Allen worked in a chicken plant and on a peanut farm for a few months. (R. 441.)

of seizures, hypertension, right shoulder problems, and shortness of breath.  (R. 14.)

Accordingly, the ALJ concluded that Allen is not disabled.  (R. 28.)

## IV.  The Plaintiff's Claims

As stated by Allen, she presents the following issues for the court's review:

1.    Whether the ALJ erred as a matter of law when he failed to
      properly discredit Dr. Banner.

2.    Whether the ALJ erred as a matter of law when he failed to find
      that Allen's shoulder problem is a severe impairment.

3.    Whether the ALJ erred as a matter of law when he failed to
      properly consider the side effects of Allen's medication.

4.    Whether the ALJ erred as a matter of law when he failed to find
      that Allen either met or equaled Listing 12.05C.

(Doc. No. 13, p. 1.)

## V.  Discussion

Allen asserts that the ALJ erred in determining that her shoulder condition is not a

severe impairment.  She also contends that the ALJ erred in failing to assign any weight to Dr.

Banner's findings concerning the range of motion of her neck and shoulders and her

manipulative hand skills.

The severity step is a threshold inquiry which allows only "claims based on the most

trivial impairment to be rejected."  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Indeed, a severe impairment is one that is more than "a slight abnormality or combination of

slight abnormalities which would have no more than a minimal effect on an individual's

ability to work."  *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval

Social Security Ruling 85-28 at 37a).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 1382c(a)(3)(c).  The plaintiff has the "burden of showing that [her] impairments are 'severe' within the meaning of the Act."  *McDaniel*, 800 F.2d at 1030-31.   Once the plaintiff establishes that she suffers from a severe impairment, the ALJ is not entitled to ignore that evidence.  In finding that Allen did not suffer from any severe physical impairments, the ALJ reviewed Allen's medical records to ascertain whether there was a medically determinable impairment.  A review of the record demonstrates that the ALJ's determination that Allen does not suffer from a severe physical impairment is supported by substantial evidence. "Unless the claimant can probe, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits."  *Id*. at 1031.

There are no diagnoses included in the record which indicate that Allen suffered from any severe physical impairments, such as a severe neck, shoulder, or hand condition, during the relevant time period.  The court recognizes one isolated reference in Dr. Banner's medical examination form indicating that, on the day of the consultative examination, the range of motion of Allen's neck and shoulders fell outside the normal range and that her hand manipulation was diminished.  Specifically, Dr. Banner noted that the range of motion of Allen's neck included a 15 degree extension and a 20 degree lateral flexion and the range of motion of her shoulders included a 40 degree internal rotation.  (R. 390.)  The consultative physician also found that Allen's manipulation was "fine and gross diminished in both

hands." (R. 392.) The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11ᵗʰ Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11ᵗʰ Cir. 1983). Although Dr. Banner made notes concerning his physical examination of Allen's neck, shoulders, and hands, he did not diagnose Allen as suffering from any medical condition related to range of motion or manipulation problems or make any recommendations for treatment with respect to those conditions.[5] Consequently, even if the ALJ were to have afforded great weight to Dr. Banner's notations concerning range of motion and manipulation, the ALJ's conclusion that Allen's physical impairments are not severe would not in any way be affected by Dr. Banner's findings because the consultative physician did not diagnose Allen as suffering from a shoulder, neck, or hand condition.

Allen also argues that the ALJ should have found her shoulder pain to be a severe impairment because she has a well documented history of shoulder problems. The medical records, however, indicate that Allen's treatment for her shoulder condition occurred sporadically and fell outside the relevant time period. For example, in January 1998, Allen received treatment for a left shoulder contusion at the Southeast Medical Center after suffering a fall while playing basketball. (R. 171-173, 175-76.) A physician noted that Allen had decreased strength in her left hand, as well as decreased range of motion with abduction

---

[5] Dr. Banner diagnosed Allen as suffering from the following: (1) Seizure Disorder; (2) CVA by history; (3) MI by history; and (4) Hypertension. (R. 392) He also emphasized that Allen "[n]eeds psychiatric or neurological evaluation" and that "[l]ong term medical care is needed." (*Id.*)

of her left shoulder.  (R. 172-73.)   An x-ray indicated no fractures or dislocations.  (R. 175.)

Upon discharge, Allen was advised to take Anaprox to relieve her pain.  (R. 176.)  In July

1998, Allen returned to the Southeast Medical Center with complaints of left shoulder pain.

(R. 237.)  A physician noted that the range of motion of Allen's left shoulder was reduced

secondary to pain and that there were no clicks or grating.  (*Id*.)  In May 2000, Allen went to

the office of Dr. Charles Ted Paulk, a family practitioner, complaining of left shoulder

discomfort.  (R. 357.)  Dr. Paulk prescribed Decadron and Wygesic to alleviate Allen's pain

symptoms.  (*Id*.)   During a follow-up visit on June 9, 2000, Dr. Paulk noted that Allen had

"mild discomfort ROM of the left shoulder [and] mild tenderness along the superior edge of

the trapezius." (R. 356.)  Dr. Paulk diagnosed Allen as suffering from bursitis and  prescribed

Decadron LA and Celebrex.  (R. 356.)   On June 21, 2000, Allen returned to Dr. Paulk's

office with complaints of left shoulder discomfort and reporting that "it got better when she

got the Cortisone injection and after four or five days the discomfort was the same again." (R.

355.)  Dr. Paulk noted that Allen had full range of motion of her left shoulder with tenderness

over the AC joint and assessed that her pain was "probably secondary to arthritis or bursitis."

(*Id*.)  Dr. Paul prescribed Vioxx to treat Allen's condition.[6]  (*Id*.)  Thus, the medical records

indicate that, after seeking treatment on two occasions in 1998 and three occasions in 2000,

Allen did not complain of shoulder pain or seek further treatment for this condition.  The

court, therefore, concludes that the ALJ's determination that the objective medical evidence

does not establish that Allen's shoulder problem "entailed significant work-related limitations

---

[6] The medical records also indicate that Dr. Paulk arranged for Allen's shoulder condition to be
assessed by Dr. Simpson on June 30, 2000. (R. 355.)  The transcript before this court, however, does not
indicate that Allen was examined by Dr. Simpson or that she sought further treatment for her shoulder
condition.

for a continuous period of 12 months during the relevant period under consideration" is supported by substantial evidence.

To the extent Allen asserts that the ALJ failed to properly consider the effects her prescribed medications have on her ability to work, she is entitled to no relief. The ALJ must consider the side effects of Allen's medication where their existence is supported by substantial evidence. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). During the hearing, Allen testified that her medications cause drowsiness and light sensitivity and that her doctor advised her that the medicine may also cause restlessness. (R. 443.) In his analysis, the ALJ found as follows:

> . . . [T]here is no supporting evidence that the medications prescribed for the claimant have the incapacitating side effects she described. A careful review of all the treatment notes and reports reveal no such complaints as to drowsiness, sleepiness, dizziness, or memory loss due to medication usage, and she has not mentioned such in any other context of evidence. Further, if such complaints were to be made, it is expected that her physicians would seek to ameliorate said effects by certain measures, such as switching medications, etc. Therefore, the undersigned does not find that this allegation has been established as an actual 12-month functional work-related limitation.

(R. 26.)

Allen maintains that the medical records demonstrate that she reported a variety of side effects to her physicians. (Doc. No. 13, pp. 10-11.) Specifically, Allen asserts that the medical records indicate that she suffered confusion, weakness, sleepiness, lethargy, sedation, and/or difficulty relaying her complaints and history on several occasions. (*Id*.) This court's

review of the records, however, indicates that several of Allen's reported symptoms occurred in the emergency room of the hospital shortly after she had suffered a seizure and were the result of her failure to take her prescribed seizure medication.  (R. 325, 335, 341, 364.) Although the medical records indicate that Dr. Banner noted that Allen is a poor historian and reported that she fatigues easily and "is sleepy a lot," nothing in the non-treating consultative physician's notes indicates that Allen's fatigue and sleepiness are debilitating or are side effects of her medication.  (R. 389.)  There is one brief reference to side effects in the record in which Dr. McKeown notes that Allen "indicates some sedation from her medication."  (R. 395.) Dr. McKeown's isolated reference to "some sedation," however, does not demonstrate that Allen's medication caused debilitating side effects as a 12-month functional limitation. Moreover, with the exception of Dr. McKeown's notation, there is no medical evidence demonstrating that Allen complained of any side effects to her doctors.  In fact, during office visits to her treating physician in 2003 and 2004, Allen reported that she suffered no side effects from her medications.  (R. 383-85.)  Given the lack of medical records indicating that Allen's medication caused any debilitating side effects, the court concludes that the ALJ's determination that there is no supporting evidence indicating that the effects of Allen's medications are disabling is supported by substantial evidence.

Allen also contends that the Commissioner erred in failing to find, as a matter of law, that she is disabled under § 12.05C of the Listing of Impairments. *See* 20 C.F.R. Subpart P, App. 1. The Listing provides, in pertinent part, that a claimant is disabled if she meets the following criteria:

12.05 Mental Retardation: Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 CFR Pt. 404, Subpt. P, App. I. Thus, to be considered for disability benefits under Listing 12.05C, a claimant must (1) have significantly subaverage intellectual functioning; (2) have deficits in adaptive functioning; and (3) have manifested deficits in adaptive behavior before age 22. *See Pettus v. Astrue*, 226 Fed. Appx. 946, 948 (11th Cir. 2007) (citing *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). In addition, the claimant must have (1) a valid IQ score of 60 through 70 inclusive, and (2) an additional mental or physical impairment significantly affecting the claimant's ability to work. *Id.*

The record indicates that Allen was administered the Wechsler Intelligence Scale for Children-Revised by an educational evaluator in 1984 and the Wechsler Intelligence Scale for Adults ("WAIS-III") by Dr. Walter Jacobs, a consultative psychologist, in 2007. In 1984, Allen received a verbal IQ score of 81, a performance IQ score of 100, and a full scale IQ score of 89.6 at the 95% confidence level. (R. 145.) In 2007, Allen received a verbal IQ score of 63, a performance IQ score of 72, and a full scale IQ score of 64. (R. 430.) Dr. Jacobs noted that he "would not expect any significant change in the next six to twelve months" and that Allen "appeared to give good effort during testing." (R. 431.) In his

10

analysis, the ALJ relied on the 1984 test results when determining that Allen does not have significantly subaverage intellectual functioning with deficits in adaptive functioning prior to age 22.  (R.  20.)  Allen argues that the ALJ should have relied on the 2007 IQ test indicating that she has a full scale IQ of 64, which indicates that she meets the requirements of the first prong of the Listing.  However, even assuming Allen has a valid IQ score of 60 through 70 inclusive, she has not demonstrated that she meets the second prong of 12.05C. As previously discussed, nothing in the record indicates that Allen suffers from an additional mental or physical impairment significantly affecting her ability to work.  Consequently, the ALJ's determination that Allen does not meet or equal the requirements of Listing 12.05C is supported by substantial evidence.  Based on the foregoing, this court concludes that the ALJ did not err as a matter of law and that the ALJ's decision to deny benefits is supported by substantial evidence.

The Commissioner's decision denying benefits is due to be affirmed.  A separate final judgment will be entered.

Done this 26th day of February, 2009.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE